**TENNECO OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 29486.

United States Court of Appeals, Fifth Circuit.

May 7, 1971.

490

Robert Malinak, John E. Watson, Gen. Atty., Baker, Botts, Shepherd & Coates, Houston, Tex., for petitioner.

Gordon Gooch, Gen. Counsel, Israel Convisser, Federal Power Commission, Peter H. Schiff, Solicitor, Leo E. Forquer, Asst. Gen Counsel, Washington, D. C., for respondent.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

GOLDBERG, Circuit Judge:

Tenneco Oil Company objects to orders issued by the Federal Power Commission requiring the refund of excess charges collected under a temporary certificate authorizing the sale of gas to United Gas Pipe Line Company. Our question revolves around who has the primary responsibility for pursuing and sequestering excess exactions for gas sold pursuant to temporary certification. There is no utopian choice, and our solution is therefore melioristic at best.

In 1958 the working interests in the Northwest Channel Field, a gas field in Texas, were owned by Renwar Oil Corporation, E. Layton Brown, and F. William Carr. In that year Renwar applied for a certificate of public convenience and necessity from the Federal Power Commission to sell gas from the field to United Gas Pipe Line Company. The Commission granted Renwar a temporary certificate, authorizing the sale of gas to United at a contract price of 18.-2304 cents per Mcf, and on July 31, 1959, Renwar began deliveries. In October, 1960, Tennessee-Texan purchased Renwar's interest in the field and was later substituted by the Commission as the certificate holder. At the time Tennessee-Texan acquired its interest the other co-owners were Brown, Carr, and two additional owners, Guest and Barbour, who had acquired a part of Carr's interest. In February, 1962, Tenneco acquired the assets and assumed the liabilities of Tennessee-Texan. Shortly thereafter, the Commission substituted Tenneco as the certificate holder. Later, on March 1, 1963, Tenneco acquired Brown's interest, leaving Carr, Guest, and Barbour as co-owners. During the period from July, 1959, to April, 1963, the temporary certificate holders (Renwar, July 1959—October 1960; Tennessee-Texan October, 1960—January, 1962; and Tenneco, January, 1962—April, 1963) collected the entire proceeds from the sale of gas to United and remitted to each co-owner his respective share.

In April, 1963, the Federal Power Commission issued Tenneco a permanent certificate calling for an in-line price for sales of natural gas from the Northwest Channel Field at 15 cents per Mcf, three cents lower than the price which had been collected since 1959 in accordance with the temporary certificate. After much litigation, the Federal Power Commission ordered Tenneco to refund the sums collected in excess of the permanently certified rate. In so doing the Commission ordered Tenneco to refund not only those sums in excess of the permanently certified rate which Tenneco (and Tennessee-Texan) had collected for its own use between October, 1960, and April, 1963, but also ordered Tenneco to refund the following: $14,625.00, rep-

resenting the excess sums collected by Renwar between July, 1959, and October, 1960, when Tenneco acquired Renwar's interest; $33,325.00, representing the excess sums remitted to Brown between July, 1959, and March, 1963, when Tenneco acquired his interest; and $34,-045.00, representing the excess sums remitted to Carr, Guest, and Barbour between July, 1959, and April 1963. In effect, the Commission has held Tenneco responsible for the refund of one hundred percent of the excess sums received by all owners of the gas interests in the Northwest Channel Field between July 1959, and April, 1963. Tenneco appeals from this order. Agreeing with the Commission, we affirm.

■ It is now well settled that the Commission may and should require refunds from the producer if the price exacted from the purchaser by the producer operating under a temporary certificate is greater than the in-line price for the area eventually established by the Commission. This is true even when, as here, the temporary certificate does not contain an express refund condition. Federal Power Commission v. Sunray DX Oil Company, 1968, 391 U.S. 9, 88 S.Ct. 1526, 20 L.Ed.2d 388; Continental Oil Company v. Federal Power Commission, 5 Cir. 1967, 378 F.2d 510, *cert. denied*, Austral Oil Co., Inc. v. Federal Power Commission, 391 U.S. 917, 88 S.Ct. 1801, 20 L.Ed.2d 656; Public Service Commission of the State of New York v. Federal Power Commission, 1964, 117 U.S.App.D.C. 287, 329 F.2d 242, *cert denied*, Prado Oil & Gas Co. v. Federal Power Commission, 377 U.S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735. In *Sunray DX, supra*, the Court set forth the reasons why it felt compelled to reject the producer's argument that refunds should not be allowed:

"We consider that in so holding the Tenth Circuit erred. The producers' initial contention in support of the opinion below is that temporary certificates are appealable orders, and that under § 19 (b) of the Natural Gas Act, 15 USC § 717r(b), review must be sought within 60 days of the issuance of the certificate and not, as here, at the time of application for a permanent certificate. We find this argument unpersuasive. Temporary certificates normally are issued ex parte, upon receipt of an application from a producer in the form of a letter. This procedure is authorized by a proviso to § 7(c) of the Act, quoted supra, at 407, which permits the Commission to issue temporary certificates without any notice to potentially interested persons. Hence, no one but the producer recipient may be aware of the issuance of a temporary certificate within the appeal period.

"Moreover, to hold that a temporary certificate must be challenged immediately or not at all, as the producers suggest, might encourage appeals which would impair the usefulness of temporary certificates. Temporary certificates are intended to permit immediate delivery of gas in emergencies. To delay the issuance of the certificate and the flow of the gas until the completion of judicial review which might consume months or years would severely hamper the performance of this function. We therefore hold that parties, at least those other than the producer itself, may challenge a temporary certificate at the time a permanent certificate is applied for.

"The producers' second argument is that a temporary certificate is a "final" order creating vested rights, and that it may be altered only prospectively. This contention is related to the last, and has much the same flaw. To encourage early attack on temporary certificates would diminish their utility. Yet to discourage prompt challenges and simultaneously to hold that refunds could not be ordered for the interim period would in large part frustrate the objectives of the Natural Gas Act by allowing producers to operate for long intervals on the basis of their own representations and with only minimal regulation by the Commission.

"The producers' third contention, which coincides with the rationale of the Tenth Circuit below and in its previous decision in Sunray Mid-Continent [Oil

Co. v. F. P. C., 270 F.2d 404], supra, is that temporary certificates must be retroactively unmodifiable in order that producers may be assured of a firm price at which to operate. We cannot accept this reasoning. When a producer has requested permission to begin delivery of gas prior to completion of normal certification procedures, due to an emergency, we think it not unfair that in return for that permission it accept the risk that at the termination of those procedures the terms proposed by it may be retrospectively altered to conform to the public interest.

"We are strengthened in that view by this Court's decision in Callery [United Gas Improvement Co. v. Callery Properties, Inc., 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284], supra. The Court there held that when a permanent certificate, containing no refund condition, is held on judicial review to have embodied too high an in-line price, the Commission may on remand condition the new permanent certificate to require refund of the excessive charges received under the old. If the producer expectations created by a permanent certificate may thus be overridden by the public interest, then the surely lesser reliance induced by an unconditioned, temporary certificate issued on the producer's own representations should not bar a later refund requirement. For all of these reasons, we hold that in the exercise of its power to condition permanent certificates under § 7(e), the Commission may require producers to refund amounts collected under outstanding, unconditioned temporary certificates in excess of the finally established in-line price."

391 U.S. at 43–45, 88 S.Ct. at 1543–1545 (footnotes omitted).

In the present proceeding Tenneco does not contest the general power of the Commission to order refunds, but instead claims that the Commission has violated its announced equitable principles in ordering Tenneco, as the certificate holder, to refund the entire amount. We do not agree.

Immediately after the decision of the Court of Appeals for the District of Columbia in Public Service Commission of the State of New York v. Federal Power Commission, *supra,* which first held that the commission should exact refunds when the in-line price as eventually determined was lower than the sums collected under a temporary certificate, the Commission began to formulate equitable rules for the collection of these refunds. Pursuant to this plan the Commission quickly announced in Skelly Oil Co., 1966, 35 F.P.C. 849, 854, that

"In general, we think refunds should be required except to the extent that a producer shows both (1) that he has paid out monies that would not have been paid out had he not relied reasonably and in good faith upon the Commission's order and statements indicating that no refunds would be ordered, and (2) that the monies so paid out cannot be recouped (either as a matter of law or as a practical matter) or that, while recoupment might be had, the expense of such recoupment would be disproportionate to the amount to be recovered."

Tenneco has seized on this pronouncement and argued in effect that any time a certificate holder is unable to recoup excess monies paid to its predecessors or co-owners, the certificate holder should be excused from its refund obligation. We do not think, however, that the Commission's pronouncement was intended to be this broad. Moreover, even if it can be read with such breadth, we think that later announcements of the Commission modified the extent of the exception.

At the outset, we note that in *Skelly* the Commission was dealing with two distinct types of payments which might have been made by a producer and which could not be recouped: state production taxes and royalties. The Commission made no reference to excess profits made by the preceding certificate holder and co-owners. More important, shortly after the Commission's opinion in *Skelly,*

that body explicitly dealt with excess profits made by predecessors and co-owners. In doing so the Commission clearly indicated that the refund obligation of the certificate holder would be excused in only rare and exceptional cases.

In Turnbull and Zoch Drilling Co., 1966, 36 F.P.C. 164, 166, the Commission in discussing excess exactions made by a predecessor of the certificate holder determined "that the fact that properties were transferred from one owner to another will not eliminate any refund obligation of the earlier owner for the period of his ownership." On the other hand, in that same opinion the Commission held that

"Any successor in interest, whether his successorship occurs by lease, acquisition, stock purchase, or however, takes the risk that his interpretation of the law or his suppositions as to the facts may be erroneous, just as he acquires the possibility of unexpected gain should some unforeseen legal interpretation or newly discovered fact increase the value of what he has acquired. A successor in interest is subject to all obligations which would have been fixed upon his predecessor had no transfer taken place." 36 F.P.C. at 166.

■ At first glance these two determinations appear to be inconsistent. However, we think that in this opinion the Commission intended to indicate that the successor in interest would be responsible for making the refunds, but that he could seek recoupment from the prior owner, who had actually received the excess payments and who was therefore primarily liable for their refund if the contractual arrangement executed at the time of the assignment permitted such recoupment.[1] Clearly, however, the Commission intended to hold the successor certificate holder responsible for the refund if recoupment was not possible.

The only exception which the Commission has made to this rule involved the Livingston Oil Company. In that particular case the Commission, prior to the time Livingston succeeded to the interests of Crescent Oil and Gas Corporation, informed Livingston by letter that Livingston would be responsible for refunds only from the date it succeeded to Crescent's interest. Turnbull and Zoch Drilling Company, 1968, 40 F.P.C. 7. Since Livingston was expressly told that it would have no refund obligation for its predecessor's refunds, the Commission determined that it would be inequitable to exact those refunds from Livingston.

Later the Commission faced the problem of excess profits paid over to co-owners by the certificate holder and determined that the certificate holder would be responsible for refunding the entire excess amounts. In Sinclair Oil and Gas, 1968, 40 F.P.C. 410, 418, the Commission held:

"In general, a person in whose name a filing is made with this Commission undertakes to be responsible for all duties and obligations with respect to the interest for which he holds a certificate. If, for reasons of convenience, various working interests wish to have a certificate filed in one name only, arrangements should be made with respect to the sharing of obligations between them if the party in whose name a certificate is issued is not to bear the full burden of responsibility. It is almost inevitable that unanticipated circumstances will arise from time to time. Generally speaking, the interest of the public should not be prejudiced and the responsibilities of producers under the Natural Gas Act and the orders of this Commission should not be avoided by a

---

[1]. Our court, although silent on this precise issue, affirmed the Commission's refund order in *Turnbull*. Continental Oil Company v. Federal Power Commission, 5 Cir. 1967, 378 F.2d 510, cert. denied, Austral Oil Co., Inc. v. Federal Power Commission, 391 U.S. 917, 88 S.Ct. 1801, 20 L.Ed.2d 656.

filing of several working interest owners in the name of a single party for their own convenience. It is the intention of this Commission in all future cases to require the full responsibility with respect to any producing property to be discharged by the party or parties in whose name or names filings are made with this Commission. All persons making future filings should take this policy into account.

\* \* \* All producers are now on notice that the absence of an express refund condition from a temporary certificate will be no bar to an order to refund any excessive amounts collected. No producer will be entitled to proceed upon the assumption that refunds will not be ordered. The holder of a certificate will be fully responsible for all matters which may arise in connection with the interest covered by his certificate and, with that in mind, should make any necessary arrangements for equitable sharing of responsibilities with other working interest holders. If he fails to do so, this will not constitute a ground for releasing him from full responsibility."

In subsequent proceedings in the same case, however, the Commission made it clear that the certificate holder retained a right of recoupment against the co-owners:

"Sinclair further asks that the Commission order make clear that it applies to Sinclair's co-owners. As a matter of equity Sinclair's co-owners should be primarily responsible for refunds of the excess amounts actually received by them, for excess amounts received by any persons to whose interests they succeeded, and for their proportionate share of amounts received by any predecessor whose interest was divided among them. It will be made a condition of the certificate here issued to Sinclair, et al., that the co-owners pay to Sinclair for escrow or retention the refunds for which they are responsible and that they sign the required refund report. Accept-

ance of the certificate issued should also be indicated by signature of the co-owners as well as Sinclair. In the event of hardship upon any co-owner, such co-owner may apply for an order permitting payment over a period of time, or may arrange for payment of all or part of its share of the gas being produced to Sinclair until the co-owner's refund obligation has been satisfied."

Sinclair Oil Corp., 1968, 40 F.P.C. 1279, 1280.

▪ The Commission's determination with respect to the refund obligation of certificate holders who have paid over receipts due their co-owners is similar to the obligation of successors in interest with respect to funds paid to their predecessors. The certificate holder is responsible for making the refund but may seek recoupment from its co-owners, who are primarily liable for the excess funds they actually received. The only exception which the Commission has made with respect to this obligation concerns the situation which arises when the certificate holder has so many co-owners that the liability of each for refunds is so small that the cost of recoupment would exceed the amount due from the co-owners. Using this de minimis concept the Commission has excused the certificate holder from paying the refunds due in respect to funds paid over by it to other co-owners. *See* Sinclair Oil Corporation, *supra,* 40 F.P.C. 1279.

Thus it is clear that the Commission's policy regarding refunds is that the certificate holder at the time the refunds are ordered is responsible for the payment of refunds as to payments it received, payments its predecessors received, and payments its co-owners or their predecessors received. The exceptions to this responsibility announced by the Commission are narrow and extremely limited.

▪ Applying the Commission's announced policies to the present case we do not find, as Tenneco alleges, that the Commission has· deviated from its announced principles and treated Tenneco

unfairly in comparison to the treatment afforded other producers by the Commission. Tenneco has failed to bring itself within the de minimis concept employed by the Commission to excuse the refund responsibility of a certificate holder for funds paid over to its co-owners. The number of co-owners involved here is far less and the refund obligation of each is far greater than those involved in cases where the Commission has excused the certificate holder. *See* Sinclair Oil and Gas Company, *supra,* 40 F.P.C. 410; Sinclair Oil Corp., *supra,* 40 F.P.C. 1279 ($200 from each co-owner); H. L. Hawkins, 1966, 36 F.P.C. 149, where the only relief given was an extension of time to make the refund payments where the interests were much more fractured than those involved here.

Further, Tenneco had never been advised by the Commission, as had Livingston Oil, that it would not be responsible for its predecessors' refund obligation. While we doubt the propriety of the sending of such a letter by the Commission, the existence of such a missive from the Commission equitably distinguishes that case from the one before us, and we cannot see how the Commission's determination in that case can have any relevance to Tenneco's present situation.

█ Finally, although Tenneco alleged that it had paid out money that it would be unable to recoup, an exception to the refund obligation noted by the Commission in Skelly Oil Corp., *supra,* 35 F.P.C. 849, this exception, as we have previously demonstrated, does not apply to the refund obligation arising out of excess profits made by previous certificate holders and co-owners. Moreover, even if the exception did apply, Tenneco has failed to bring itself within this exception. The Commission found, and the evidence supports this finding, that Tenneco had made no actual attempt to find those persons from whom it could seek recoupment. If the exception does apply to the type of excess payments for which Tenneco is now being held responsible, a proposition which we do not accept, there is no doubt that a certificate holder must prove a diligent effort to recoup its losses before the Commission is required to excuse a refund obligation under this exception. Mere allegation of abstract hardships or theoretical inequities are insufficient to escape refund liability. Tenneco therefore cannot claim the benefits of the *Skelly* rule.

Consequently, we find that Tenneco has not been treated unfairly by the Commission in the sense that the Commission has failed to treat Tenneco in accordance with that body's announced policies. On the contrary, as far as we can determine, the Commission has fairly applied to Tenneco its rules as announced in its opinions.

Tenneco's plight, however, raises a more fundamental issue. Assuming, as we have found, that the Commission has fairly and equitably applied its announced policies, the question remains whether or not the Commission was justified in formulating those policies in the first instance. In essence, the question is whether as a matter of law the Commission may hold the certificate holder directly responsible with a mere right of recoupment for the refund of excess monies actually received by its predecessors in interest and by its co-owners or their predecessors, parties admittedly primarily liable for the refund.

█ In evaluating the rules of the Commission, the starting point is to determine whether those rules are reasonable measures to achieve the purposes of the Act. Permian Basin Area Rate Cases, 1968, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312. The basic purpose of the Natural Gas Act is to achieve the complete, permanent, and effective protection of consumers from excessive rates and charges. Federal Power Commission v. Sunray DX Oil Company, *supra.* Since refunds are necessary to assure the complete consumer protection required by the Act, effective means of collecting those refunds are mandatory. Here the Commission has determined that it cannot contact each individual owner or predecessor in title in order to

collect the total refund due, and has concluded that financial responsibility should be placed upon the certificate holder.

■ We think under the circumstances the Commission has made a reasonable decision in order to overcome enormous problems; we cannot straitjacket that body as it carries out its mission of collecting the refunds due the consumer. The complexities of the problem demanded Commission flexibility and judgment, and the courts have traditionally construed the Act to give the Commission expansive powers in regard to its choice of methods for fulfilling its functions under the Act. *See* Mesa Petroleum Co. v. Federal Power Commission, 5 Cir. 1971, 441 F.2d 182.

In the present situation to require the Commission to proceed against each individual liable for refunds would be contrary to the basic thrust of the Commission's ratemaking process. The Commission early discovered that it was administratively impossible to set rates on an individual basis. The plethoric ownership of oil and gas fields made individual contact virtually impossible. The Commission therefore moved to an area rate concept, an administrative device which has received Supreme Court sanction. Permian Basin Area Rate Cases, *supra.* The collection of refunds is an integral part of the ratemaking process and raises identical administrative problems. It would be unreasonable to force the Commission back to an individual basis in the collection of refunds when for its ratemaking function it has abandoned such a time-consuming process with Supreme Court sanction because of the physical impossibility of administration.

Once individual-by-individual collection is abandoned, it becomes necessary to fix financial responsibility on some party. The Commission has determined that the certificate holder should bear the refund responsibility, and we think the decision to deal with that party as the representative of the other interested parties makes a great deal of adminis-

trative sense. In the present case Tenneco sought and obtained from the Commission a certificate by which it assumed the responsibilities of its predecessors and which allowed the sale of gas from other owners in the dedicated field. Tenneco assumed the position of liaison between the previous certificate holder and the Commission, and between the other owners and the Commission, and in this sense Tenneco became the administrative agent of the Commission. The other co-owners came within the Commission's domain through Tenneco, the certificate holder. Being the Commission's agent, Tenneco was the one to whom the Commission turned when refunds were due. The right to the refund is beyond cavil, and the ultimate risk of loss must fall on someone other than the consumer. Federal Power Commission v. Sunray DX Oil Company, *supra.* This risk can reasonably be placed on Tenneco by the Commission, for, as the certificate holder and administrative go-between, it is the party that is generally most privy to the title interest and location of the parties primarily liable, its predecessors, and co-owners.

■ In short, we do not think that the burdens placed by the Commission on the certificate holder are so egregious or so out of step with rational administrative measures as to require our judicial nullification. The principle of holding a license holder responsible for the action of his predecessors or those who operate with his permission under his license is not an alien concept to our jurisprudence, and we find the Commission's adoption of this principle entirely reasonable under the circumstances. Equitable pricing is the paramount purpose of the Natural Gas Act, and this objective cannot be bogged down in an administrative quagmire. The certificate holder is the bridge to the refunds necessary to achieve this purpose, and the Commission must not be denied an undetoured and safe passage to those refunds.

For the foregoing reasons, the order of the Commission is affirmed.