373 F.2d 96
 CONTINENTAL OIL COMPANY, the Atlantic Refining Company, Tidewater Oil Company and Cities Service Oil Company, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent,
Long Island Lighting Company and Public Service Commission of the State of New York, Intervenors.
 No. 8117.
 United States Court of Appeals Tenth Circuit.
 February 10, 1967.
 Rehearing Denied March 20, 1967.
 
 Bernard A. Foster, Jr., Washington, D. C. (Bruce R. Merrill, Joseph C. Johnson and Thomas H. Burton, Jr., Houston, Tex., for Continental Oil Co.; Stuart J. Scott, Dallas, Tex., and Ross, Marsh & Foster, Washington, D. C., for Atlantic Refining Co.; Clyde E. Willbern, Houston, Tex., for Tidewater Oil Co.; and Cecil C. Cammack and R. J. Leithead, Bartlesville, Okl., for Cities Service Oil Co.; on the brief), for petitioners.
 Howard E. Wahrenbrock, Washington, D. C. (Richard A. Solomon, General Counsel, Cyril S. Wofsy and Joel Yohalem, Washington, D. C., on the brief), for respondent.
 Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.
 DAVID T. LEWIS, Circuit Judge.
 
 
 1
 This case reaches us after transfer from the District of Columbia Circuit[1] as one of many seeking review of orders of the Federal Power Commission entered in the matter of Union Texas Petroleum et al., Opinions Nos. 436 and 436-A, 32 F.P.C. 254 and 32 F.P.C. 952. These cases, consolidated for hearing in this court under the style of Pan American Petroleum Co. et al. v. FPC, seek to test the validity of the subject orders as the culmination of the Union Texas proceedings wherein the Commission determined an in-line price for permanent certificates of public convenience and necessity for jurisdictional natural gas produced and sold in the South Louisiana area. The instant case consists of joint and several petitions by the CATCO group of independent producers and presents additional issues peculiar to these petitioners and not dependent upon the validity or non-validity of the rate-making aspects of the Commission's orders. Petitioners contend that they were improperly included in the Union Texas proceedings.
 
 
 2
 The sales of gas here involved are made to Tennessee Gas Transmission Company from petitioners' interest in "Block 47-48," a part of East Cameron Area, offshore Louisiana. Temporary authorization for such sales was granted by the Commission in 1961 at an initial price of 21.4¢ per Mcf, the contract price. Other sales made by petitioners from the East Cameron Area were the subject of the Supreme Court's consideration in CATCO, Atlantic Refining Co. v. Public Service Comm'n of N. Y., 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312. In proceedings subsequent to the remand in CATCO, the Commission entered its Opinion No. 351, 27 F.P.C. 96, certificating such other sales at 18.5¢ per Mcf. As an aftermath of CATCO and the issuance of Opinion No. 351, petitioners and four gas distribution companies sought to settle their rate difficulties on all offshore sales made to Tennessee including those sales not the subject of Opinion No. 351. "Block 47-48" sales were thus included in a settlement agreement which was submitted to the Commission in September 1962 and approved by the Commission in its "Order Conditionally Approving Rate Settlement Proposal, Severing and Terminating Proceedings" issued December 21, 1962, 28 F.P.C. 1090. It is the effect of this order of approval that premises petitioners' contentions that they were improperly included in the Union Texas proceedings. Provisions of the settlement agreement pertinent to our inquiry are:
 
 D. Blocks 47 and 48:
 1. Price:
 
 3
 Commencing September 1, 1962, and continuing through the moratorium period ending July 1, 1967, the total rate charged shall be 19.5 cents per Mcf. Subject to the provisions of Section IV below, no rate change shall be filed by Petitioners prior to July 1, 1967.
 
 2. Refunds:
 
 4
 Each Petitioner shall refund to Tennessee, with seven (7) percent interest, a sum equal to two-thirds (2/3) of the difference between the price charged to and collected from Tennessee and 19.5 cents per Mcf, from the date of initial deliveries to August 31, 1962, both inclusive. No interest shall accrue after August 31, 1962.
 
 3. Modification of Temporary Authority:
 
 5
 The price condition in each temporary authorization heretofore issued to each Petitioner shall be amended to read as follows:
 
 
 6
 "The initial price for such service shall be 19.5 cents per Mcf at 15.025 psia; provided, however, that such price shall be changed to agree prospectively with whatever initial service price is determined by the Commission in an order which becomes final and no longer subject to judicial review in Docket Nos. AR61-2, et al., or other similar proceeding; and provided, further, that if such price so determined is less than 19.5 cents per Mcf, Applicant shall not be obligated to make refunds."
 
 IV
 
 7
 It is the intention of this Settlement Proposal that the prices established herein for the "moratorium" period shall be subject to upward or downward adjustment during the "moratorium" period according to any specifically applicable area rate or rates ultimately determined in the South Louisiana Area Proceeding, Docket Nos. AR61-2, et al., or other proceeding of a similar nature, prospectively from the date of such determination. Therefore, it is expressly provided as a part of this Settlement Proposal that:
 
 
 8
 (A) If the Commission, in Docket Nos. AR61-2, et al., or other proceeding of a similar nature, issues an order which becomes final and no longer subject to judicial review during the "moratorium" period, determining an applicable area rate or rates lower than the settlement prices provided herein, each Petitioner agrees to file for a prospective rate decrease to such applicable area rate or rates.
 
 
 9
 (B) If the Commission, in Docket Nos. AR61-2, et al., or other proceeding of a similar nature, issues an order which becomes final and no longer subject to judicial review during the "moratorium" period, determining an applicable area rate or rates higher than the settlement prices provided herein, each Petitioner shall have the right to file for a prospective rate increase to such applicable area rate or rates, provided that such increase is permitted by the terms of the contract involved. (Emphasis supplied.)
 
 
 10
 At the time the settlement agreement was proposed and approved, "Block 47-48" proceedings were consolidated in the South Louisiana Area Proceeding, Docket Nos. AR61-2 et al., the latter then incorporating consideration of both section 7 certificate proceedings and sections 4 and 5 rate proceedings. Thereafter the Commission severed all certificate proceedings from the South Louisiana Area docket and consolidated them in Union Texas. Petitioners duly objected to the inclusion of "Block 47-48" in Union Texas, asserting then as now that the order violated the settlement agreement.
 
 
 11
 All parties agree that the issue presented must be determined from an interpretation of the language of the settlement agreement viewed against the circumstances then existing including the mandates of the Natural Gas Act. The order of the Commission denying petitioners' motions for severance from Union Texas, 29 F.P.C. 730, succinctly and properly words the controlling issue thus:
 
 
 12
 "The intention of the parties to the settlement, as approved by the Commission, must depend upon the language used in the settlement agreement. The terms of the agreement must be interpreted as reasonable men would normally understand them."
 
 
 13
 Divorced from the sophistication of supporting argument, petitioners' contention is a simple one. The settlement agreement provides, so state petitioners, that "Block 47-48" issues are to be determined in the South Louisiana Area Proceeding or in "other proceedings of a similar nature." The Union Texas proceeding was not one "of similar nature" with the South Louisiana Area Proceeding. The order of transfer thus violated the terms of the settlement agreement. Two Commissioners agreed.[2]
 
 
 14
 The position of the Commission cannot be divorced from its sophisticated reasoning. Conceding that the South Louisiana Area and Union Texas proceedings are such as to contain many differences,[3] the Commission contends in effect that despite such differences the phrase "similar nature" was intended by the parties to include any proceedings appropriate to determine a certificated price under the provisions of the Natural Gas Act.[4] In support of this contention emphasis is placed upon the fact that the settlement agreement does not refer to or specifically change the language contained in petitioners' original temporary authorities which stated:
 
 
 15
 "The above specified rate [21.4¢ Mcf] shall remain in effect until changed by Commission order in this proceeding, Docket No. CI62-147 [Continental's original docket number]."
 
 
 16
 And the Commission then concluded as reflected in the majority opinion accompanying the order denying petitioners' motions for severance from Union Texas, 29 F.P.C. 730:
 
 
 17
 "The interpretation we must give the Movants [producers] position would lead to the conclusion that the parties intended that the temporary authorization have the same effect as a permanent certificate. If this were so, no advantage would be obtained by the careful use of the language employed in the revision of the temporary authorization. If the same result was intended there was no need for the parties to carefully state otherwise. We must conclude that a different result was intended and that when the parties stated that the initial price is to remain in effect until the initial service price is determined in Docket No. AR61-2, et al., or other similar proceeding, they intended that the initial service should remain in effect until a permanent certificate was issued in the specific certificate proceeding for which their application was docketed." (Emphasis by the Commission.)
 
 
 18
 We think that the reasoning of the Commission violates both the simple wording of the settlement agreement and the underlying purpose of the agreement. The legal fact remains undisputed that Union Texas was not a proceeding similar in nature to South Louisiana. Nor are the attempts of the Commission to avoid that fact convincing in logic or law. The language contained in petitioners' temporary authorities is simply "boilerplate" intended to prevent a certificate holder from filing for a change of rate during the life of a temporary certificate. This routine provision was encompassed within the enlarged terms of the settlement agreement and the original reference to Continental's docket number cannot be given totally unreal significance. And finally, nothing in the Natural Gas Act requires that a temporary certificate be superseded by a permanent certificate prior to the determination of the just and reasonable rate under sections 4 and 5.[5]
 
 
 19
 This court has long recognized the right of the Commission to set the scope of its proceedings and to utilize its administrative tools within the broadest of discretions, subject only to a prohibition against the denial of a specific right. Colorado Interstate Gas Co. v. F. P. C., 10 Cir., 370 F.2d 777, and cases cited. But settlement agreements are encouraged for the very purpose of setting rights, providing for stability in the exercise of those rights, and, unless such agreements run afoul of the Natural Gas Act or the public good, should be interpreted to accomplish the clear and stated purpose contained therein. Such an agreement "should stand for what it says." Texas Eastern Transmission Corp. v. F. P. C., 5 Cir., 306 F.2d 345, 348.
 
 
 20
 Petitioners should not have been included in the Union Texas proceedings. Accordingly, the case is remanded for further hearings in proceedings complying with the provisions of the settlement agreement or otherwise agreed to by the parties.
 
 
 
 Notes:
 
 
 [1]
 Jurisdiction is based on § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), and 18 U.S.C. § 2112
 
 
 [2]
 "Commissioners O'Connor and Woodward dissent on the grounds that the order is inconsistent with the intent of the Settlement Agreement entered into by the parties and approved by the Commission, in that the proceeding here involved is not `similar' to AR61-2 in the sense that the term was used."
 
 
 [3]
 Brief for Respondent, p. 26. The concession was necessary. Union Texas was a § 7 proceeding probing "public convenience and necessity"; South Louisiana included consideration of §§ 4 and 5 for determination of "just and reasonable price." The evidentiary scope of the two types of proceedings is different. Cf. United Gas Improvement Co. v. Callery Properties, Inc., 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284
 
 
 [4]
 Only one of the eight draftsmen agrees and that one has a clear economic benefit. It has intervened in the case, but has filed no brief
 
 
 [5]
 Several certificate applications were consolidated in the Permian Basin Area Rate Proceeding where the Commission held:
 "This proceeding, instituted under Section 5(a) of the Natural Gas Act, will determine the just and reasonable rates to be hereafter observed and in force for all jurisdictional sales being made under respondents' rate schedules. Such rates will apply as ceilings to all sales of respondents whether they were being made at the time we instituted this proceeding or were begun subsequent thereto." Opinion No. 468, mimeo ed. p. 127, 34 F.P.C. ___, ___. See Skelly Oil Co. v. F.P.C., 10 Cir., 375 F.2d 6.
 The certificate applications were disposed of in a separate order which stated simply:
 "As we stated in Opinion No. 468, the just and reasonable area rate fixed therein constitutes the `in line' price required by the public convenience and necessity in granting permanent certificates." Order Issuing Certificates, issued August 5, 1965, 34 F.P.C. ___, ___.