HUNT OIL COMPANY et al., Marathon Oil Company, Amerada Petroleum Corporation, Shell Oil Company, Texaco, Inc. and Sun Oil Company, Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 27457.

United States Court of Appeals, Fifth Circuit.

April 21, 1970.

Rehearing Denied June 16, 1970.

Donald K. Young, Robert W. Henderson, Dallas, Tex., for Hunt Oil Co., and others.

Tom Burton, Houston, Tex., for Continental Oil.

Edwin S. Nail, Tulsa, Okl., Neal Powers, Jr., Houston, Tex., for Midhurst Oil.

Edwin S. Nail, Tulsa, Okl., for Amerada Petroleum Corp.

Oliver L. Stone, Thomas G. Johnson, New York City, for Shell Oil Co.

James D. Annett, William R. Slye, Robert E. Newey, Houston, Tex., for Texaco, Inc.

Jack Fariss, Morton Taylor, Findlay, Ohio, for Marathon Oil Co.

Louis Flax, Stanley M. Morley, Washington, D. C., for petitioners.

Richard A. Solomon, Gen. Counsel, F. P. C., Peter H. Schiff, Solicitor, Washington, D. C., for respondent.

Sheldon Rosenthal, Princ. Counsel, Public Util. Comm. of Cal., San Francisco, Cal., for the People of the State of Cal. and the Public Utilities Commission of the State of Cal.

F. T. Searls, Malcolm H. Furbush, San Francisco, Cal., for Pacific Gas & Elec. Co.

John Ormasa, Harvey L. Goth, William H. Owens, Los Angeles, Cal., J. Calvin Simpson, San Francisco, Cal., for Pac. Lighting Serv., Sou. Cal. Gas Co. and Sou. Cts. Gas Co.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a proceeding to review orders of the Federal Power Commission requiring petitioners, who are independent producers of natural gas, to refund moneys collected in excess of price ceilings subsequently established by the Commission. The rates that the Commission seeks to enforce have been reviewed and approved by the United States Supreme Court. Permian Basin Area Rate Cases, 1968, 390 U.S. 747, 88 S.Ct. 1344, 20 L. Ed.2d 312. We find the producers' arguments to be in the nature of a collateral attack on those rates, and accordingly we affirm the Commission. We add, however, that our decision does not affect any duty the Commission might have in light of recent evidence to consider a direct petition for modification of the rate structure as provided in the

Supreme Court's *Permian* opinion. 390 U.S. at 772, 88 S.Ct. at 1362.

The *Permian Basin* case was the first proceeding in which the Federal Power Commission set industrywide rates on an area basis. Under its mandate to determine just and reasonable rates for natural gas sales, the Commission set maximum prices for the area, which includes parts of New Mexico and of the Texas Panhandle. Numerous producers, including all but two of the parties to this appeal, bitterly contested both the rates themselves and the Commission's power to set them. They appealed the Commission's orders to the Tenth Circuit and from there carried their case to the Supreme Court, which ultimately affirmed the Commission's regulatory scheme in full. From start to finish, the Permian Basin litigation occupied eight years and caused every conceivable criticism of the area regulatory process, of whatever merit, to be presented and considered.

The sales involved in this case are from wells located in the Permian Basin, and it would appear *prima facie* that they were subject to the Commission's price ceilings. The only reason the producers are able to argue that they are not is the fortuitous circumstance that prices for the sales were set by producers during the pendency of the *Permian* proceeding. Hence they were not technically consolidated into that on-going case. The matters thus presented to the Commission for refund fall into three categories: (1) Rates for all sales of approximately seventy producers who were not parties to the original *Permian* proceeding because they had not been active in the area before the proceeding began; (2) nearly five hundred cases concerning price increases instituted by producers during the proceeding and subjected by the Commission to possible refund liability upon completion of the proceeding; and (3) approximately 140 temporary certificates of public convenience and necessity granted producers during the proceeding for the operation of new facilities with the understanding that permanent certification would be considered after the proceeding was over, together with the setting of initial prices that might create refund liability. After the original area proceedings were concluded and price ceilings set, the Commission required all producers having matters not consolidated in the proceedings to show cause why the area rate should not be applied to determine their refund liability. The petitioners to this appeal all responded to the show cause order, but the Commission decided from the nature of the responses that they sought merely to relitigate the area rates and presented no grounds for exemption from those rates. Since it appeared that the producers presented no issues meritorious even on their face, the Commission determined that no factual questions requiring the examination of evidence had been raised. It therefore ordered refunds on the basis of the applicable ceilings without affording the producers an evidentiary hearing. It is from this order that the producers now appeal.

The producers' basic contention, which lies at the heart of each of their arguments, is that the *Permian* rates cannot be applied to any of these matters without an independent hearing. Thus the largest group of producers, the Texaco group, presents the following three arguments: (1) That section 4 of the Natural Gas Act, when read together with the Administrative Procedure Act, requires a hearing on all refunds from rate increases; (2) that section 7 of the Act requires a hearing on certificate proceedings; and (3) that no refunds should be allowed to decrease revenues below what they would have been under then prevailing market prices in the area, which must be determined by an evidentiary hearing. Hunt Oil Company and its group of petitioners adopt all these arguments and also urge, as to two Hunt entities that were not present in the area when the proceeding began, that these entities are being denied due process and are taken by surprise by having the area rates applied to them

and without a hearing. Finally, Sun Oil Company advances an alternative to the Commission's refund method and argues that it was entitled to a hearing to present the alternative to the Commission. We take up the arguments in this order of presentation.

■■ First, the producer argument that section 4 of the Natural Gas Act and the Administrative Procedure Act require hearings to redetermine area rates each time they are applied has been considered and rejected by the Supreme Court. Permian Basin Area Rate Cases, 1968, 390 U.S. 747, 781, 88 S.Ct. 1344, 1367, 20 L.Ed.2d 312; *see also* Southern Louisiana Area Rate Cases v. Federal Power Commission, 5th Cir., 1970 [No. 27492, slip opinion dated March 19, 1970]. These cases concerned the somewhat different problem of moratoriums on increased rate filings established by the Commission as ancillary regulations necessary to the area regulation process. The Commission set the moratoriums in these cases because without them producer price increases would have to be dealt with on a case-by-case, individual producer basis and would thereby destroy all benefits of the industrywide area regulatory process. In the case at bar, the producers admittedly complain of an FPC action that could be consolidated into a single hearing, but it nonetheless would place unjustifiably heavy burdens on the Commission to require it to relitigate its rates because of the irrelevant circumstance that these particular sales were not joined in the rule-making proceedings. The *Permian* proceeding, as we have pointed out, took eight years for ratemaking and review. Any proceeding to set these rates anew would inevitably be lengthy and unduly taxing on the Commission's resources. Furthermore, it would ignore the basic character of area rate regulation, which is in the nature of a rulemaking proceeding. Area rates are quasi-legislative rather than quasi-judicial in that they involve considerations that apply industrywide. If adjudicatory facts—facts governing the applicability of the rates to particular persons as distinguished from facts applying broadly across the industry—had been in issue, then a hearing might be necessary, *see* K. Davis, Administrative Law Treatise §§ 7.02, 7.04 (1958, Supp. 1965), but the responses to the show cause order disclosed no adjudicatory issues. We think therefore that the reasoning of the *Permian* and *Southern Louisiana* cases rejecting the producers' section 4 arguments also applies here.

■ The producers' argument under section 7 is similarly technical and similarly unmeritorious. This argument applies only to sales pursuant to temporary certificates, all of which are now subject to determination of an initial price that will fix refund liability. If section 7 requires a hearing on this question, it does so only to the extent that circumstances peculiar to the application, or adjudicatory facts, are presented. *See* Phillips Petroleum Co. v. FPC, 10 Cir.1969, 405 F.2d 6, 9; *cf.* United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081; *see also* Upjohn Co. v. Finch, 6th Cir.1970, 422 F.2d 944, (construing statute providing for hearing when application states "reasonable grounds"). In this case, no showing was made of any cause for exceptions from the area rate. There was merely an attack on the area rates themselves, and this kind of presentation, as the Commission has indicated, does not justify ad hoc exceptions from the rates.

■ The producers' next argument, that the Commission acted unlawfully in using the area rate as the refund floor, is based upon the assumption that the Commission was required to determine a separate "in-line" rate in a new hearing. Some background is required for an understanding of this argument. Before the area regulation process began, the Commission had gravitated toward lax approval of producer price increases, and the Supreme Court ordered it to take steps to hold prices "in line." Atlantic Refining Co. v. Public Service Comm., 1959, 360 U.S. 378, 79 S.Ct. 1246,

3 L.Ed.2d 1312 (the *CATCO* case). Pursuant to the *CATCO* decision, which furnished a great part of the impetus toward adoption of the area regulatory method, the Commission issued its Statement of General Policy No. 61–1, 1961, 24 F.P.C. 818, in which it stated that it would not generally approve new certificates that provided for gas sales at prices higher than the prevailing market rate in the area. This prevailing price was known as the "in-line" rate. Subsequently, the Commission used this in-line rate on a few occasions to determine refund obligations during the pendency of area proceedings, since it seemed desirable to get refunds to the public without waiting for those lengthy proceedings to be concluded. In one such case, this Court reversed the Commission because it held that the Commission should make these refunds only on the basis of the finally determined just and reasonable area rate; the Supreme Court, however, reversed this Court and sustained use of the "in-line" rate because it concluded that the refunds should be made "at the earliest possible moment consistent with due process." United Gas Improvement Co. v. Callery Properties, Inc., 1965, 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284. In one other case, FPC v. Sunray DX Oil Co., 1968, 391 U.S. 9, 88 S.Ct. 1526, 20 L.Ed.2d 388, the Supreme Court upheld use of the in-line price as a refund floor, again giving as its reason the need for speed in getting refunds to the public. These cases, however, do not furnish any basis for the argument that it is the in-line rate rather than the area rate that should now be used to compute refund liabilities. They make it clear that the in-line rate is merely a temporary approximation of the just and reasonable rate. In the *Sunray DX* case, for example, the Court said, "The just and reasonable rates determined in those [area rate] proceedings apparently will automatically become the in-line prices for those areas." 391 U.S. at 39, 88 S.Ct. at 1542 n. 25. Similarly, in the original *Permian* case, the Court approved use of the area rate to compute refund liabilities in consolidated certificate proceedings. *See also* Southern Louisiana Area Rate Cases v. Federal Power Commission, 5th Cir.1970 [No. 27492; slip opinion dated March 19, 1970, at 13 n. 21].

■ In a related argument, the producers contend that the in-line rate should be considered a refund floor for equitable reasons. It may be conceded that the ordering of refunds is subject to equitable considerations. *See* Public Service Comm. of State of New York v. FPC, 1964, 117 U.S.App.D.C. 287, 329 F.2d 242, 250. Here, the producers object to the fact that the area rates are lower in some instances than in-line rates determined in the past because the Commission's order incorporates a system of discounts for gas of substandard quality. In some cases, these discounts reach substantial proportions so that the amount at issue is not inconsequential. However, the producers' reliance on past in-line rates, if indeed they did rely on them, was pure speculation. By taking temporary certificates, they subjected themselves to refund liability that would most likely be computed on the basis of the area rate, since determination of that liability was deferred until completion of the area proceeding. The Commission and the courts both pointed in this direction, as the considerations expressed by the *Sunray DX* Court show. Clearly, the use of area rates to compute refund obligations was not so inequitable under these circumstances as to require reversal of the Commission's order.

■ Besides adopting the foregoing arguments, the Hunt group of petitioners, composed of nine entities that are separately involved in operations in the Permian Basin, argue that two of these entities, Hunt Petroleum Corporation and Hassie Hunt Trust, are denied due process and subjected to surprise by the Commission's order. These two entities were not respondents to the original *Permian* proceeding because they had no jurisdictional sales in the area when

that proceeding began. We must none-theless reject the argument. The Hunt entities knew or should have known of the existence of the *Permian* case. Even if we attribute to them the most pristine naivete, we must infer that they knew when they entered the Permian Basin that this proceeding would proba-bly affect their rates. Having thus en-tered an industry that they knew was being subjected for the first time to group regulation, they are not denied due process by the application of that regulation to them. As to surprise in having the rates applied to them, the Hunt entities had a full opportunity to respond to the show cause order with any facts at their disposal. They raised no such issues. Under these circum-stances, due process was satisfied when the newcomer companies were allowed to show why regulation should not be ap-plied to them in their particular situa-tion, and there was no need for allowing them to reopen the entire industrywide regulatory scheme.

The argument presented by Sun Oil Company involves a process for computing refunds different from that adopted by the Commission. Sun sug-gests that it be allowed to retain all moneys collected in *excess* of rate ceil-ings that can be offset by sales it has made *below* the ceilings. It argues that it was unable to present this plan in the original *Permian* case and that the Com-mission's refusal to receive evidence on the plan deprives Sun of the hearing to which it is entitled. It offers to show that this plan is administratively feasi-ble, that it would produce no inequities among consumers, that it would honor contract rates, and that it would apply evenly to producers. The trouble is that even if these matters be conceded the plan is still inconsistent on its face with the regulatory scheme established in *Permian*. The rates that the Commis-sion has set are maximum rates, and the order contemplates that a producer's sales will be equal to *or less than* those maximum rates. Sun interprets the rate system as entitling it to collect revenues equal to the area maxima in all cases, and this is obviously not the intent of the system. The plan is thus a mere proposal for a price system different from that adopted by the Commission in its eight-year original *Permian* case, and the Commission did not act unlawfully in refusing to consider evidence that would not avoid the inconsistency of the plan with the pricing system now adopt-ed. Actually, the plan now proposed by Sun was presented to the Commission in *Permian* by other parties and vigorously litigated at all levels of that original proceeding, so the plan has already been rejected on its merits. *See* 390 U.S. at 825–828, 88 S.Ct. at 1390–1392.

In summary, the producers' ar-guments on this appeal are overly techni-cal and fail to take into account the na-ture of the area regulation process. There is no justification, after the area rate is set, to hold a hearing just to hold a hearing, especially one so lengthy as a gas rate proceeding. A hearing is re-quired only in so far as it is required to resolve contested issues that will affect the outcome of the proceeding. Resolu-tion of issues floating in a vacuum should be avoided, as should mere col-lateral attacks on industrywide rules. In this case, the producers claim entitle-ment to a hearing on the technical ground that the sales involved were not consolidated with the *Permian* case, and it was not inappropriate for the Com-mission to begin the inquiry by assum-ing the correctness of the rates it had adopted and asking only whether those rates were applicable to these producers. The dispositive fact is that the produc-ers have shown no reason why their sales, which differ from all other Permi-an Basin sales only in that they were not consolidated in the *Permian* proceed-ing, should be treated differently from those sales that were consolidated.

It should be added that the arguments of the Commission are also technical. The Commission has not even attempted to meet the arguments of the producers that the rate schedules set up in the original *Permian* proceeding are ren-

dered questionable by recent evidence disclosing the probability of an imminent, severe gas shortage. The FPC Staff, for example, in a public document issued just five months ago, concludes that "only a few years remain before demand will outrun supply." FPC Staff, Report on National Gas Supply and Demand 1 (1969); *see generally* Southern Louisiana Area Rate Cases v. Federal Power Commission, 5th Cir.1970 [No. 27492; slip opinion dated March 19, 1970, at 46–61]. We are especially concerned about the Commission's avoidance of this issue when the Staff Report, *supra* at 4, urges that "[a] major new government-industry program is needed immediately to insure the continued growth of natural gas service during the next decade." Part of that program, says Staff, should be "exploration incentives." Here, the producers seek to produce recent evidence, not before the Commission in *Permian*, to show that the cost-based rates are inadequate. In the *Southern Louisiana* cases, this Court reviewed another area rate proceeding and stated that although it affirmed the Commission in full, it did so partly because the Commission had undertaken, in that case, to begin review of all parts of its rate structure in light of the new evidence. *Southern Louisiana Area Rate Cases, supra,* at 69–70. At oral argument in the case at bar, Commission counsel responded to questions concerning gas supply by informing the Court that the FPC was "not impervious" to the possibility of a gas shortage and that one reason why the Southern Louisiana proceeding had been reopened while the *Permian* proceeding had not was the lack of Commission resources to study all areas at once.

 Be that as it may, the Commission must examine the new evidence in the context of its Permian Basin rates at the earliest opportunity to see whether these rates as a whole require reopening of the proceeding. The Supreme Court's *Permian* opinion makes this duty of continuing re-examination clear. Concededly, the order of proceedings on this question is subject to a certain degree of FPC discretion, but examination of the evidence should be undertaken soon. With these considerations in mind, we rest our affirmance on the narrow ground that the Commission was not technically required to hold a hearing in order to apply the area rate to refund questions because no individual adjudicatory questions were presented. It was similarly not required to reexamine its entire rate structure in a collateral proceeding that concerned only part of the sales in the Permian Basin area, sales that are no different from other Permian sales. We do not consider and do not decide whether the evidence that the producers seek to adduce would require the Commission to hold a new area hearing or modify its area rates if that evidence were properly presented in a direct petition for modification.

Affirmed.