BRISTOL & WARREN GAS COMPANY

v.

Edward F. BURKE et al.

SOUTH COUNTY GAS COMPANY

v.

Edward F. BURKE et al.

Nos. 78–445–M.P., 79–11–M.P.

Supreme Court of Rhode Island.

April 28, 1982.

Coffey, McGovern, Noel & Novogroski, John G. Coffey, Jr., Ralph Della Rosa, Providence, for petitioners.

Dennis J. Roberts II, Atty. Gen., John R. McDermott, Sp. Asst. Atty. Gen., for respondents.

Gary E. Powers, Carol Marine, Rhode Island Legal Services, Inc., Providence, for intervenor, Coalition for Consumer Justice.

## OPINION

WEISBERGER, Justice.

These are statutory petitions for certiorari brought by Bristol and Warren Gas Company (Bristol) and South County Gas Company (South County) pursuant to G.L.1956 (1977 Reenactment) § 39–5–1, seeking review of orders of the Public Utilities Commission (commission) that required both companies to make refunds to their customers, with interest, and that rejected certain deductions which the companies claimed to be germane and appropriate to such refund proceedings. Since both petitions involve similar issues, they were consolidated for oral argument before this court. We affirm the orders of the commission in both cases. The facts underlying these controversies are as follows.

In September 1977 Bristol received from its pipeline supplier a refund in the amount of $87,215.75 as reimbursement for overcharges accumulated during the period from October 1, 1975, to June 30, 1977. In May 1978 Bristol received a further refund in the amount of $293,566.40 to reimburse overcharges accumulated during the period from January 1, 1974, to March 31, 1978. These refunds were made necessary by the regulatory policies of the Federal Energy Regulatory Commission (FERC), the successor to the Federal Power Commission (FPC). The policy of FERC is to permit rate increases of wholesale gas suppliers to go into effect without investigation and hearing, subject to refund in the event that FERC ultimately determines the rate to be excessive in whole or in part. In order to adjust the price that distribution companies such as Bristol and South County may charge for gas by reason of cost increases and refunds from its suppliers, each company has, as a part of its filed tariff, a purchase gas-price adjustment clause (PGA). This clause allows a utility automatically to adjust its rates up and down to accommodate increases or decreases in the price of gas as it comes from the utility's suppliers and as this price relates to the companies' regular customers (as opposed to its customers who purchase gas on a contractual, seasonal basis). See *Providence Gas Co. v. Burke*, 119 R.I. 487, 380 A.2d 1334 (1977).

In September 1977, South County received a refund from its pipeline supplier in the amount of $51,050.18 to reimburse overcharges accumulated during the period October 1, 1975, to June 30, 1977. In May 1978 South County received a further refund in the amount of $162,265.44 to reimburse overcharges accumulated during the period from January 1, 1974, to March 31, 1978.

In accordance with the PGA clauses of both companies, they filed with the commission on various dates plans for distribution of the proceeds of said refunds to their customers. As a result of litigation then pending in this court and of various hearings that were subsequently initiated by the commission, hearings on the Bristol refunds were held on various dates in September and October of 1978. Hearings were held in respect to the South County refunds during October 1978.

Both companies proposed in their refund-distribution plans to deduct certain expenses that had been incurred by the companies in the course of rate-hearing dockets, which expenses had not been theretofore recouped. Both companies sought to deduct sums of money for cumulative underrecovery of purchased-gas costs under prior PGA clauses. The companies further sought to deduct sums which allegedly represented costs incurred in the issuance of the instant refunds.

The decisions and orders of the commission denied all of the proposed deductions, and in addition each company was ordered to pay to its customers the full amount of the refunds together with interest. These refunds were allowed to be made over a period of time by means of a credit to customers during the balance of the applicable heating season.

I

THE INTEREST ISSUE

■ Both companies challenge the legality of the interest charges required by the commission in addition to the principal balance found to be due. In both instances the companies argue that the delay in making the refund was due either to dilatory procedures of or the withholding of approval by the commission. The companies' arguments disclose that they misconceive the rationale for the interest charges. Charges of interest are not assessed against the companies as a penalty but are required to be paid in order to avoid a windfall to the companies which otherwise would result by virtue of

their using the funds either for investment or to finance operations. As we said in *Providence Gas Co. v. Burke,*

"The refund belongs to the company's customers, and it is obvious the company should make amends for the use of funds that actually belonged to eligible customers." *Id.* at 505, 380 A.2d at 1343.

Without belaboring this point, we note that both companies relied upon *Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467 (9th Cir. 1953), for the proposition that a fund in the custody of the law which cannot be paid out without the order of a court does not ordinarily bear interest. In that case the court actually ordered Wells Fargo to pay interest to a foreign bank on deposits held in this country by Wells Fargo up to the point at which the funds were deposited in the registry of the court. The rationale was stated as follows:

"During this period, [prior to deposit in the registry] Wells Fargo was enjoying the beneficial use of this money. It could be used to satisfy the reserve requirements, to make investments upon which interest would be drawn, or for any other banking purpose. There is no showing that Wells Fargo set aside or in any other way restricted the use of the funds deposited by the Bank * * *." (Footnote omitted.) *Id.* at 472.

To the same effect were holdings in *United Gas Improvement Co. v. Callery Properties, Inc.,* 382 U.S. 223, 230, 86 S.Ct. 360, 364, 15 L.Ed.2d 284, 290 (1965), and *Shutts v. Phillips Petroleum Co.,* 222 Kan. 527, 559, 567 P.2d 1292, 1315–16 (1977), *cert. denied,* 434 U.S. 1068, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).

■ Although our holding in *Providence Gas Co. v. Burke, supra,* would seem to be dispositive of this issue, the companies argue that in the prior case the Providence Gas Company did not actively oppose the awarding of interest. The companies in the instant case argue that there is no statutory authority for such award. We disagree. The powers of the commission and the division are required by G.L.1956 (1977 Reenactment) § 39–1–38 to be liberally con-

strued and to include "in addition to powers herein specified, all additional, implied and incidental power which may be proper or necessary to effectuate their purposes." Certainly the power to make refunds and to set rates as set forth in G.L.1956 (1977 Reenactment) chapter 3 of title 39 would of necessity include by implication the power to avoid windfalls to utilities and unjust enrichment by the application of an appropriate quantum of interest by way of compensation for the use of customers' moneys pending determination of the amount of the refund to be made and the method of disbursement to be used.

## II

## THE UNDERRECOVERY ISSUE

■ In both cases the companies challenge the commission's disallowance from the refund-distribution plan of cumulative underrecovery of purchased-gas costs relating to prior PGA clauses. In both instances the commission disallowed these deductions because the tariff contains a specific procedure for dealing with an over- or underrecovery of gas costs on an ongoing basis. Therefore, the purported deduction of such amounts in connection with the refund-distribution plan was not appropriate for consideration in such a proceeding and consequently was unrelated thereto. The rejection by the commission of purported deductions irrelevant to the instant proceedings was neither unreasonable nor arbitrary and was indeed consonant with orderly procedure.

## III

## THE RATE–HEARING EXPENSE ISSUE

■ The third issue raised by the companies relates to the disallowance of accounting and other expenses incurred by the companies in respect to prior rate hearings in which the companies sought relief. In essence, the commission found that such costs were not properly deductible from the

purchased-gas refund in the instant cases. It appears that the companies now do not challenge the finding that the rate-case expenses were not relevant to the instant proceeding. They do challenge on due-process grounds the findings of the commission that the rate-hearing costs were improper and could never be recouped in any proceeding, even when said expenses might be relevant.

We recognize that the companies, in seeking a deduction of these rate expenses from the proposed refund, were opening the door to a determination by the commission on the merits. The commission had previously found that the expenses incurred in previous rate-hearing dockets Nos. 1191 and 1192 were improper and unjustified. Moreover, the commission had previously, in docket No. 1283, determined that such expenses were not properly deductible from the purchased-gas refunds. We are not unmindful of the justification for the commission's annoyance with the companies for utilizing this refund proceeding to seek reimbursement of unrelated expenses. We are not unmindful of the commission's belief that these expenses were unjustified and unreasonable even in respect to the rate dockets to which they pertained.

However, we are of the opinion that procedure will be more orderly and precedent better served if we limit our review at this time to the determination by the commission that the expenses sought to be deducted were unrelated to a refund proceeding. We shall regard any further comments by the commission on the propriety of the asserted expenses as *obiter dicta*. After the commission found that these purported expenses were irrelevant to the instant proceeding, it was unnecessary for the commission to go further. Consequently, we shall not reach the issue of the merits of such deduction and shall await a finding by the commission which squarely raises that issue before we purport to reach it on review.[1] It is sufficient for the present proceeding to

---

1. It may be argued that the commission already decided this issue in other hearings from which no petitions for certiorari were filed. We do not purport to determine whether this issue is foreclosed or open to further consideration.

affirm the commission's finding on the ground that said expenses were not relevant to a plan for distribution of a refund. At this time we need examine this issue no further.

## IV

### THE COST–OF–REFUND ISSUE

■ Finally, the companies claim that they were denied certain deductions as costs incurred in connection with the issuance of such refunds and that this was a denial of the right to equal protection of the laws. In support of these arguments the companies point to an allowance given in the case of *Providence Gas Co. v. Burke, supra,* for expenses actually incurred in making the refund. Again the companies misconceive the distinction between the *Providence Gas* case and the instant cases. In *Providence Gas,* the company was required to make a lump-sum refund to each of its regular customers, thus giving rise to accounting and check-writing expenses of a significant dimension. *See* 119 R.I. at 494–95, 380 A.2d at 1338. In the cases at bar, the companies were allowed to make the refund by giving credits over the remainder of the heating season. This was done in order to save the companies the expense of the sort incurred in the *Providence Gas* case. The legal fees allegedly incurred in respect to the instant refunds were found by the commission not to have been extraordinary but rather to have been a part of the ongoing cost of regulation for which an allowance had previously been made in the companies' prior rate cases. Such expense was found to be an element of the cost of service incorporated into the companies' rate bases. This finding is not unreasonable or arbitrary and is supported by competent evidence. Therefore, this issue is without merit.

For the reasons stated, the companies' petitions for certiorari are denied and dismissed, the writs heretofore issued are quashed, and the records are ordered to be returned to the commission with our decision endorsed thereon.