405 F.2d 6
 78 P.U.R.3d 200
 PHILLIPS PETROLEUM COMPANY, Union Oil Company of California,
and Gulf Oil Corporation, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent, People of the State of
California, public Unilities Commission of the State of
California, Southern California Gas Company, Southern
Counties Gas Company of California, Pacific Gas and Electric
Company, and San Diego Gas & Electric Company, Intervenors.
 Nos. 8723, 8778, and 8808.
 United States Court of Appeals Tenth Circuit.
 Jan. 2, 1969.
 
 John R. Rebman, Bartlesville, Okl., for petitioners. With him on the briefs were:
 Wm. J. Zeman, Lloyd G. Minter, Kenneth Heady and Stanley L. Cunningham, Bartlesville, Okl., for Phillips Petroleum Co.
 John C. Snodgrass, Houston, Tex., L. A. Gibbons, George C. Bond, Los Angeles, Cal., and Vinson, Elkins, Weems & Searls, Houston, Tex., for Union Oil Co. of California.
 Warren M. Sparks and Donald R. Arnett, Tulsa, Okl., for Gulf Oil Corp.
 Peter H. Schiff, Solicitor, F.P.C., for respondent. With him on the brief were Richard A. Solomon, Gen. Counsel, and Joel Yohalem, Atty., F.P.C.
 Lawrence Q. Garcia, San Francisco, Cal., for intervenors. With him on the briefs were:
 Mary Moran Pajalich and J. Calvin Simpson, San Francisco, Cal., for intervenors the People of the State of California and the Public Utilities Commission of the State of California.
 John Ormasa and Harvey L. Goth, Los Angeles, Cal., for intervenors Southern California Gas Co. and Southern Counties Gas Co. of California.
 Frederick T. Searls, Malcolm H. Furbush and Stanley T. Skinner, San Francisco, Cal., for intervenor Pacific Gas and Electric Co.
 Chickering & Gregory, Sherman Chickering, C. Hayden Ames, and Donald J. Richardson, Jr., San Francisco, Cal., for intervenor San Diego Gas & Electric Co.
 Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The petitioners, independent producers of natural gas, seek review of Opinion No. 484, and accompanying orders, of the Federal Power Commission. The question is the propriety of the use by the Commission of the Permian Basin area rate as the in-line rate for the grant of permanent certificates of public convenience and necessity under 7(c) of the Natural Gas Act, 15 U.S.C. 717f(c). When the case was first here, we granted the petitions for review on the basis of our rejection of the Permian Basin area rate in Skelly Oil Company v. Federal Power Commission, 10 Cir., 375 F.2d 6. See Phillips Petroleum Company v. Federal Power Commission, 10 Cir., 377 F.2d 278. The Supreme Court granted certiorari in both the Skelly case and in these cases. It upheld the Permian Basin area rate decision of the Commission in its entirety. See Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312. The cases at bar were remanded for further consideration in the light of the Permian Basin decision. See California v. Phillips Petroleum Company, 391 U.S. 365, 88 S.Ct. 1664, 20 L.Ed.2d 639.
 
 
 2
 We are concerned with gas which is produced in Texas from the Gomez Field in the Delaware Basin which is within the Permian Basin area. Under the Permian decision, the base price for pipeline quality new gas-well gas produced in Texas and sold under contracts executed after January 1, 1961, is 16.5cents per Mcf inclusive of tax reimbursement. The contracts in issue were executed during the period November, 1963, to February, 1964, and provided for a price of 16.5cents per Mcf plus tax reimbursement of .22275cents for gas which, in some respects, does not meet the Permian quality standards. After the quality adjustments the price, inclusive of taxes, was fixed at 15.77cents for sales by Union and at 15.91cents for sales by Phillips and Gulf.[1]
 
 
 3
 The applications of the producers for 7 certificates were filed during the period January, 1962, through June, 1965, and were consolidated for hearing which was before an examiner after the denial by the Commission of rehearing in Permian.[2] Decision by the examiner was waived and Opinion No. 484 was issued on January 6, 1966.[3]
 
 
 4
 In its Permian decision the Commission said that the just and reasonable area rate there established would be the in-line rate 'until the just and reasonable rate is changed by the Commission.'[4] A separate order entered on the same day in connection with four 7 applications, which had been consolidated with the area proceedings, fixed the in-line rate at the area rate.[5] Our review of the Permian decision of the Commission did not reach the question of whether an area rate becomes the in-line rate in a 7 proceeding because we rejected the area rate. The Supreme Court upheld the Commission's Permian decision in its entirety and on this particular point said:[6]
 
 
 5
 '* * * the Commission was not forbidden to employ the area rates as the in-line rate for the purposes of sales initiated after commencement of its proceedings, but before its final decision. * * * We need not, however, determine for what further periods or in what other circumstances the Commission may use unadjusted area rates as in-line rates. Orders involving 7 proceedings commenced after the Commission's decision in these proceedings were not before the Commission, and are not now before the Court.'
 
 
 6
 The Permian decision was followed by that in Federal Power Commission v. Sunray DX Oil Company, 391 U.S. 9, 39, note 25, 88 S.Ct. 1526, 1542, 20 L.Ed.2d 388, where the Court said:
 
 
 7
 'The just and reasonable rates determined in those (area rate) proceedings apparently will automatically become the in-line prices for those areas.'
 
 
 8
 In the instant proceedings the sales were made, and the applications for 7 certificates were filed, after the initiation of the Permian area proceedings and before the Commission's decision therein. These applications were not consolidated with the Permian proceedings, but were the subject of an independent hearing and order. In denying a motion of the petitioners to protect their right to adduce supplementary evidence, or in the alternative for a continuance, the Commission said:[7]
 
 
 9
 '* * * our issuance of Opinion No. 468 (Permian) renders moot the 'hold the line' technique we have previously adopted in producer certificate proceedings in the Permian Basin, for it is clear that the just and reasonable price for new gas in the Permian Basin has now been fixed. However, the parties should be afforded an opportunity to present evidence designed to show cause why Opinion No. 468 should not apply to their proposed sales, and also the effect of the quality provisions in Opinion No. 468 upon the price proposed herein.'
 
 
 10
 In Atlantic Refining Co. v. Public Service Commission of New York, 360 U.S. 378, 392, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (CATCO), the Court pointed out that the 7 procedures were designed to hold the line until the determination of a just and reasonable rate. Here, a just and reasonable rate has been determined and upheld by the Court. Both the Permian and Sunray DX decisions recognize that the Commission may employ the area rate for the in-line rate.
 
 
 11
 Petitioners argue that the automatic use of the area rate as the in-line rate deprives them of the hearing which 7 assures. We do not agree. A hearing must be held to determine whether the application meets the test of public convenience and necessity. At that hearing the applicant has an opportunity to show the special circumstances which it believes warrant an exception from the area rate in the public interest.[8]
 
 
 12
 The Commission gave the petitioners a hearing on their applications. The petitioners offered evidence to show the high economic value of their gas and greater costs than those found in Permian.
 
 
 13
 The value claim is based primarily on the high pressure at which the gas is delivered to the pipeline. In Permian the delivery pressure was fixed at 500 pounds per square inch and a deduction was provided if this pressure was not satisfied. Here the delivery is at 985 to 1,200. The result is a substantial benefit to the purchaser.[9] The Commission said that the high pressures were not so unusual as to justify a price bonus. It pointed out that Permian did not provide a premium price for pressures above 500 pounds and held that the petitioners' request for a higher price was an impermissible attempt to amend the Permian standards. In essence the petitioners argue that the rates should be based on commodity value. The Commission and the Court rejected this in Permian and established rates based on composite costs. Any change of approach should occur in a proceeding to change the area rate-- not in a 7 proceeding.
 
 
 14
 The petitioners argue that the Permian record is stale and cannot be used to support the holding of the Commission in the instant proceedings. In Permian the Commission used 1960 as the test year to compute the cost of old gas-well gas and fixed January 1, 1961, as the cut-off date between new and old gas. Production here is from wells completed after that date.
 
 In Permian, the Court said:[10]
 
 15
 'The area rates were properly calculated as the just and reasonable rates for the Permian Basin for periods subsequent to the periods at issue, on the basis of cost factors believed to be stable throughout the periods.'
 
 
 16
 An expert for the petitioners, using the cost methods employed by the Commission in Permian, found the 1962 cost of new gas-well gas to be 18.24cents per Mcf of 11% Higher than the 16.43cents cost found by the Commission in Permian.[11] The Commission rejected this evidence. In United Gas Improvement Co. v. Callery Properties, Inc., 382 U.S. 223, 227-228, note 3, 86 S.Ct. 360, 15 L.Ed.2d 284, note 3, the Court upheld the Commission's refusal to hear evidence relating to just and reasonable rates in a 7 proceeding We believe that the same principle controls here. If the rate is no longer just and reasonable the remedy lies in another area rate proceeding-- not in a proceeding under 7.
 
 
 17
 The petitioners' argument that the Permian rates do not apply because of the higher drilling costs in the Gomez Field is unpersuasive. We agree with the Commission that it is no more than an attempt to fix rates on a field rather than area basis.
 
 
 18
 In Sunray DX the Court upheld the use by the Commission of temporary certificates to show cost trends.[12] Petitioners say that direct evidence of cost trends is more relevant to certification price levels in 7 proceedings than are temporary certificates. The difficulty is that petitioners would convert a certificate proceeding into a proceeding to establish a just and reasonable rate. Absent such a rate, the Commission can consider contract prices. In Sunray DX the Court reaffirmed the Callery rule excluding costs data from certification proceedings.[13]
 
 
 19
 Area rate making in the natural gas business is new. The Supreme Court has approved the method. If the method is to be successful, a 7 proceeding after the establishment of a just and reasonable rate cannot be converted into a proceeding for the change of that rate. The problem of what type of evidence may be received in the hearing which 7 requires remains for future consideration. All we say now is that on the record presented we are convinced that the manner in which the Commission used the area rate was not arbitrary or capricious, and that the petitions have failed to adduce evidence to show special circumstances which warrant an exception from the area rate.
 
 
 20
 The petitions for review are severally denied.
 
 
 
 [1]
 See Federal Power Commission order of June 16, 1966, in Docket Nos. CP64-211, et al
 
 
 [2]
 Rehearing in Permian was denied on October 4, 1965. See Opinion No. 468-A, 34 FPC 1068. The hearing in the instant cases was held on October 19-20, 1965
 
 
 [3]
 35 FPC 40
 
 
 [4]
 34 FPC 159, 230-231
 
 
 [5]
 34 FPC 418, 419
 
 
 [6]
 Permian Basin Area Rate Cases, 390 U.S. 747, 822-823, note 114, 88 S.Ct. 1344, 1389, 20 L.Ed.2d 312
 
 
 [7]
 Order of August 25, 1965
 
 
 [8]
 The Commission recognized this in its Permian decision, 34 FPC 159, 226, and in these proceedings. See order of August 25, 1965
 
 
 [9]
 This benefit is increased by the great volume, concentrated delivery points, and unusual purity of the gas. Because of these characteristics the gas is unusually desirable for swing and peaking purposes
 
 
 [10]
 390 U.S. 747, 823, note 114, 88 S.Ct. 1344, 1389, 20 L.Ed.2d 312
 
 
 [11]
 See 34 FPC 159, 192
 
 
 [12]
 391 U.S. 9, 29, 88 S.Ct. 1526, 20 L.Ed.2d 388
 
 
 [13]
 391 U.S. 9, 25, 88 S.Ct. 1526