405 F.2d 11
 MOBIL OIL CORPORATION, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
People of the State of California, Public Utilities Commission of the State of California, southern California Gas Company, Southern Counties Gas Company of California, Pacific Gas and Electric Company, and San Diego Gas & Electric Company, Intervenors.
 No. 8829.
 United States Court of Appeals Tenth Circuit.
 January 2, 1969.
 
 Carroll L. Gilliam, Washington, D. C., for petitioner. With him on the brief were:
 Tom P. Hamill, Robert D. Haworth, Houston, Tex., Donald G. Canuteson, Dallas, Tex., and Philip R. Ehrenkranz, and Grove, Jaskiewicz & Gilliam, Washington, D. C., of counsel.
 Peter H. Schiff, Sol., F. P. C., for respondent. With him on the brief were Richard A. Solomon, Gen. Counsel, and Joel Yohalem, Atty., F. P. C.
 Lawrence Q. Garcia, San Francisco, Cal., for intervenors. With him on the briefs were:
 Mary Moran Pajalich and J. Calvin Simpson, San Francisco, Cal., for intervenors the People of the State of California and the Public Utilities Commission of the State of California.
 John Ormasa, Harvey L. Goth and P. Dennis Keenan, Los Angeles, Cal., for intervenors Southern California Gas Co. and Southern Counties Gas Co. of California.
 Frederick T. Searls, Malcolm H. Furbush and Stanley T. Skinner, San Francisco, Cal., for intervenor Pacific Gas and Electric Co.
 Chickering & Gregory, Sherman Chickering, C. Hayden Ames, and Donald J. Richardson, Jr., San Francisco, Cal., for intervenor San Diego Gas & Electric Co.
 Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is a petition to review Opinion No. 484, and accompanying orders, of the Federal Power Commission.[1] The narrow issue presented is that the Commission applied the wrong Permian Basin area rate in granting a certificate for the sale of natural gas in interstate commerce.
 
 
 2
 The decision of the Commission in the Permian Basin area rate proceedings established a rate of 14.5¢ per Mcf for old gas-well gas and 16.5¢ for new gas-well gas produced in the Texas portion of the Permian Basin.[2] The cutoff date between old and new gas-well gas was January 1, 1961. The Supreme Court upheld the Commission's Permian decision in its entirety.[3] The proceedings which culminated in Opinion No. 484 were initiated during the pendency of the Permian proceedings and were decided after the Commission's decision but before that of the Supreme Court.
 
 
 3
 Mobil[4] filed an application under § 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c), for a certificate covering the sale of gas produced in Texas from the Rojo Caballos Field in the Delaware Basin, a part of the Permian Basin. The sale was by Mobil to the El Paso Natural Gas Company. The contract bears the date of December 28, 1960.[5] On the basis of the contract date, the Commission applied the 14.5¢ rate for old gas-well gas. The gas admittedly satisfies the quality standards set by the Permian decision.
 
 
 4
 Mobil does not now object to the application of the area rate in the certification proceeding. It argues that the sales contract was executed in March, 1961, and it is entitled to the rate for new gas-well gas. Both oral testimony and documentary evidence were offered to show continuing contract negotiations in January and February, and final execution by Mobil on March 2, 1961, and by El Paso on March 3, 1961. In support of its application for rehearing Mobil tendered an amendment to the gas sales contract executed by it and El Paso. Therein it is recited that the contract was dated December 28, 1960, through inadvertence and error. The parties agreed that the contract was amended to show a date of March 3, 1961. The Commission said that it would not allow extrinsic evidence to change the contract date. The reason given for this action was administrative inconvenience. On rehearing Commissioner Bagge dissented, saying that "administrative convenience cannot be employed to rebut facts."
 
 
 5
 In its Permian opinion the Commission said that "the new gas ceiling will be made effective for contracts entered into on or after January 1, 1961."[6] The order pursuant to that opinion, in treating gas produced in Texas, fixed a price of 16.5¢ for new gas-well gas "sold and to be sold pursuant to contracts executed on or after January 1, 1961." A rate two cents lower was fixed for gas-well gas "sold and to be sold pursuant to contracts executed before January 1, 1961."[7] On rehearing the producers contended that the division date between old and new gas should be the date of commitment to interstate commerce. The Commission rejected the argument and said:[8]
 
 
 6
 "We have chosen the date set forth in the contract because that date is precise, definite and certain, whereas the date of commitment of gas to interstate commerce is less easy of ascertainment."
 
 
 7
 Apparently the Commission did not have in mind the difference between the date set forth in a contract and the date of execution of a contract because in the order accompanying the denial of rehearing no amendment was made to the above quoted provisions of the original order.[9] Thus, the Commission left unchanged the division on the basis of the date of execution of a contract.[10]
 
 
 8
 Opinion No. 484, with which we are concerned, was entered in a § 7 certification proceeding. It does not, and cannot, change an area rate or the conditions applicable to such rate. In Phillips Petroleum Company v. Federal Power Commission, 10 Cir., 405 F.2d 6, opinion filed this date, we agreed with the Commission that a § 7 proceeding cannot be used to change an area rate or the quality standards applicable thereto. The same principle applies here. Under the Permian area order the determination of the application of the rate for old or new gas depends on the date of the execution of the contract. Any change in this requirement must be made in an appropriate area rate proceeding.
 
 
 9
 In the proceedings at bar the Commission made no finding of the date of execution of the contract. It said that the date appearing in the contract governs and that it would not receive extrinsic evidence that the contract date was not the execution date. The date of execution is a question of fact for determination by the finder of the facts. The need for such determination may not be avoided by a refusal to hear and consider the facts.
 
 
 10
 Mobil says that it and El Paso made a mutual mistake of fact and it supports this position by showing continuing negotiations between December 28, 1961, and March 3, 1961. By their amendment to the contract the parties acknowledged the mistake. The principles governing judicial reformation of a contract because of a mutual mistake of fact are well recognized.[11] We see no reason why, in the instant proceedings, the Commission should not recognize the same principles. The action of the Commission was that the contract date governed and that it was unwilling to expend time and effort to determine whether a mistake had been made. We believe that it should do so. The suggestion of the intervenors that the claim of mistake may be improperly motivated is no reason for the out-of-hand rejection of Mobil's evidence. On this appellate review we will not assume bad faith.
 
 
 11
 Administrative convenience is no substitute for the truth and should not be used to prevent the discovery of the truth. If the true date of the execution of the Mobil contract was in March, 1961, Mobil is entitled to the new gas-well gas rate under the plain terms of the Permian order. Mobil should be given an opportunity to present its evidence that the statement of the date in the contract was a mutual mistake of fact. Any contrary evidence bearing on the issue should also be received. The Commission should then make appropriate findings of fact as to the date of execution of the contract and apply the appropriate rate.
 
 
 12
 The petition for review is granted and the case is remanded to the Commission for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 For a discussion of Opinion No. 484 see our decision filed this date in Phillips Petroleum Company v. Federal Power Commission, 10 Cir., 405 F.2d 6
 
 
 [2]
 See 34 FPC 159, 239, and 1068
 
 
 [3]
 See Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312
 
 
 [4]
 During the proceedings before the Commission the corporate name of the petitioner was Socony Mobil Oil Company, Inc
 
 
 [5]
 The pertinent contract provisions are these:
 "THIS AGREEMENT, made and entered into on this the 28th day of December, 1960, by and between EL PASO NATURAL GAS COMPANY, a Delaware corporation, hereinafter called `Buyer', and SOCONY MOBILE (sic) OIL COMPANY, INC., hereinafter called `Seller',
 * * * * *
 IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed in duplicate originals on this the day and year first above written."
 
 
 [6]
 34 FPC 159, 189
 
 
 [7]
 34 FPC 159, 239
 
 
 [8]
 34 FPC 1068, 1075
 
 
 [9]
 34 FPC 1068, 1078-1079
 
 
 [10]
 In discussing the two-price system, the Supreme Court in its Permian decision, 390 U.S. 747, 795, 88 S.Ct. 1344, 1375, referred to the "moment at which the gas was first dedicated to the interstate market," and again, Id. at 798, 88 S.Ct. 1344 to the time when gas-well gas is "committed to interstate commerce." We believe that these statements have no significance here because the Court upheld the Commission's Permian decision in its entirety. If the quoted statements have significance, this proceeding will have to be remanded because the Commission made no finding of when this particular gas was dedicated or committed to the interstate market
 
 
 [11]
 See Restatement, Contracts, § 504, p. 968; Western Contracting Corporation v. National Labor Relations Board, 10 Cir., 322 F.2d 893, 900; Northern Pacific Railway Company v. United States, 10 Cir., 277 F.2d 615, 619; and Continental Oil Co. v. Mulich, 10 Cir., 70 F.2d 521, 524